FRANCISCO NÚÑEZ, ETC., Plaintiff and Appellee, *v.* PEDRO RODRÍGUEZ, Defendant and Appellant.

No. 7034. Argued March 11, 1937.—Decided May 28, 1937.

*José López Baralt* and *R. Castro Fernández* for appellant. *Gilberto Concepción de Gracia* and *C. Santana Becerra* for appellee.

Mr. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for damages. On October 21, 1932, on Martí Street, Bayamón, the motor truck H–135, driven by Daniel Lugo, injured José Luis Núñez, a child. By reason thereof, Francisco Núñez, the father of said child, brought this suit against Pedro Rodríguez as owner of the truck which he used in the delivery of milk, Lugo ·Calderón being his employee.

The defendant in his answer denied that he was the owner of the truck H–135, or that Lugo Calderón was his employee, and on the contrary alleged that the wagon belonged to Juan Rivera, of whom Lugo was an employee on the day of the accident. He denied the negligence charged against the driver of the vehicle, and as a special defense he set up that th accident was due to the act of the child in coming out of his school running to cross the street at the moment the truck was passing by, going slowly and on is right.

The case went to trial. The plaintiff introduced his evidence and the defendant presented a motion for nonsuit on the ground that it had not been shown that the vehicle belonged to him or that the driver was his employee. The motion was denied and the defendant introduced his evidence. On February 12, 1935, the court rendered judgment directing the defendant to pay to the plaintiff the sum of $1,200, with costs.

The defendant appealed and in his brief he assigns two errors committed, as he claims, by the trial court in finding that he was the owner of the truck on the day of the accident and in weighing the evidence.

The first assignment of error is subdivided into three parts, to wit: errors committed in the admission of certain evidence of the plaintiff, in denying the motion for a nonsuit, and in giving credit to certain testimony of witnesses for the plaintiff, all in regard to the ownership of the wagon.

 As the defendant introduced his evidence after his motion for nonsuit had been denied, and as, for the purpose of determining the question of ownership, said evidence would have to be taken into consideration if it supplied any deficiency existing in that introduced by the plaintiff, we shall take as a basis the whole of the evidence introduced.

The evidence of the defendant on the point under discussion was documentary and testimonial. The documentary evidence consisted in a certificate issued by the Commissioner of the Interior, showing that the truck H–135 was recorded in the name of Pedro F. Rodríguez from July 1, 1932, to September 10, 1932, on which date it appears to have been transferred to Juan Rivera, Jr., the transfer of Juan Rivera, Jr., to the Farm & Dairy Products, Inc., being recorded on December 12, 1932; another certificate of the Executive Secretary of Puerto Rico, showing that Pedro F. Rodríguez appears among the directors of the "Farm & Dairy Products, Inc."; and three further certificates, showing that Juan Rivera, Jr., did not appear during 1932–1933 as a taxpayer on any motor vehicle in Guaynabo or Bayamón, and did not have recorded any insurance against labor accidents in the transportation of milk.

The testimonial evidence consisted in the following:

Rafael Milán, Corporal of the Insular Police, upon being called to testify, stated that he went to the place immediately after the accident; that he talked to the driver of the truck, who said that its owner was Pedro Rodríguez, of Guaynabo, that it was used in the delivery of milk, and that he was employed as a driver by Pedro Rodríguez. To questions put by the defendant he answered that he arrived there between

two and three o'clock in the afternoon, when the child had already been taken away, and he saw a lot of persons accompanying the child.

An eyewitness, Antonio Díaz, stated that he talked to the driver who had been his employee and asked him "How did you do that?" to which he answered, "Don Pedro has this truck without brakes"; that Pedro Rodríguez was the owner; that the truck was used to deliver milk from the dairy of Pedro Rodríguez; that he knows this because he used to see the driver take the truck to a garage where he had some business and that the driver always said that he went there to have the truck repaired. He heard him say, "Don Pedro sends this truck to be repaired." On cross-examination by the defendant, he stated that his talk with the driver when the latter admitted that the truck belonged to Pedro Rodríguez, had taken place about three or four months before the accident; that he was sure that right after the accident the driver had told him that the truck belonged to Pedro Rodríguez; that he did not notice any sign on it whatsoever; that he knew that the milk that was being delivered belonged to Pedro Rodríguez because it was so stated by the driver.

Such was the evidence for the plaintiff, admitted over the objection of the defendant. The first witness called by the latter to testify was Juan Rivera, Jr. He was only asked if he was subpoenaed and by whom, the time of his arrival, and if he was sworn, to which he answered that he was subpoenaed by the plaintiff, that he arrived at nine o'clock, and that he had been sworn jointly with the other witnesses. After said motion for nonsuit was denied, the defendant introduced his evidence. The part thereof which is pertinent to the question of the ownership of the wagon is as follows:

A certificate of the Commissioner of the Interior, showing that the motor truck H–135, appeared recorded on October 21, 1932, in the name of Juan Rivera, Jr.; and parts of the testimony of Daniel and José Lugo, Pablo Vázquez, and the defendant himself.

Daniel Lugo testified that on or about October 21, 1937, he was working as a chauffeur; that he had an accident on that day; that he was driving a milk-delivery truck; that he talked to the police corporal who arrived at the place where the accident occurred about five minutes after the occurrence. On cross-examination by the plaintiff, he stated, over the objection of the defendant, that he thought that the truck belonged to Pedro Rodríguez; that when he went to work with that truck Pedro Rodríguez talked to him in his farm; that he knew of no other owner; that he used to take gasoline in the name of Pedro Rodríguez who authorized him to sign in his name; that he thought that on October 21, 1932, he was an employee of Pedro Rodríguez. On redirect examination, he stated that he began to work in that truck about the month of March 1932; and that when he started his work, the wagon had no sign on it, and a month or a month and a half before the accident it had one; that on it was a sign with the legend: Juan Rivera, Jr., Milk Transportation, and also a license number; that on the day of the accident the truck had that sign; that he used to take milk at the house of Pedro Rodríguez and at other places also; that Pedro Rodríguez told him to collect his salary at the milk stall of Juan Rivera; that it was Juan Rivera who paid his salary on the week preceding and the week following the accident; that notwithstanding this he still thought that the truck belonged to Pedro Rodríguez. On being again cross-examined by the plaintiff, he stated that he delivered the truck when he finished working in the same farm of Pedro Rodríguez by order of Pedro Rodríguez.

José Lugo testified that on October 21, 1932, he was working in the truck of Juan Rivera, a milk-delivery truck of Juan Rivera; that he was an employee of Juan Rivera, and a helper on the truck.

Pablo Vázquez stated that on the day of the accident he was traveling as a passenger in the truck of Juan Rivera, a milk-delivery vehicle.

The defendant himself testified that before October 21, 1932, he was the owner of a truck used for the delivery of milk which he sold in August of the same year to Juan Rivera, Jr., reacquiring it for the Farm & Dairy Products, Inc., about December of that same year, as Rivera failed to complete the payment thereof; that the sale to Rivera was not a conditional sale, and that Lugo was first his chauffeur, and then Rivera's; that the milk which Juan Rivera contracted to deliver when he was the owner of the truck was for the account of the Farm & Dairy Products, Inc.

With that evidence as a basis, can it be concluded as the trial court did that the truck in question was the property of the defendant when the accident occurred? Let us see.

In the case of *Ramos* v. *Heirs of Nadal*, 29 P.R.R. 546, it was held that the registration of an automobile in the Department of the Interior in the name of a certain person constitutes *prima facie* evidence of ownership of the automobile by said person. In the instant case the plaintiff himself introduced that evidence, which is favorable to defendant, and which is moreover corroborated by the testimony given at the trial by the defendant; by that of Juan Rivera, Jr., who, being subpoenaed by the plaintiff and having appeared, was not called by him, and hence it must be presumed, in accordance with section 464 of the Code of Civil Procedure, 1933 edition, subdivision 5, section 102 of the Law of Evidence, that his testimony would have been adverse to him; by the testimony of José Lugo and Pablo Vázquez; and by the sign on the truck.

Did the plaintiff destroy the presumption thus corroborated? For that purpose he introduced the admissions of the driver through his witnesses Milán and Díaz; he cross-examined, in the manner we have already stated, the driver, who was a witness for the defendant; and he introduced the negative certificates which we also know.

Thus, on the one hand we have a contract for the sale of a truck, entered into more than a month before the date of the accident, declared to be true by the contracting parties, on oath and in open court, made public also by a sign on the truck itself, and known in its consequences by the witnesses José Lugo and Pablo Vázquez; and on the other, we have the statement of the driver a few moments after the accident and what he testified at the trial.

■ The conclusion that the presumption was overcome implies that the contract of sale of the truck, dated September 10, 1932, was simulated and that one of the contracting parties, the defendant, aided by the other, Rivera, took advantage of the simulation to defraud the plaintiff. In such a case a strong proof, sufficient to satisfy completely the judicial conscience, is required.

The statements of the driver are impressive. He seems to tell the truth. The negative certificates tend to show that Rivera did not comply with his duty as an employer or as an owner. But really neither the one nor the other are sufficient, in our opinion, to declare the simulation and the fraud, especially since Rivera had been the owner of the truck and of the business only for a few months, and the belief of the driver that Rodríguez was the owner may be explained by the fact that Rodríguez used to be the owner and he was the one who employed the driver when he owned the milk-delivery business, which apparently continued in the same situation notwithstanding the transfer.

This last consideration which we have just stated—that is, that the milk-delivery business apparently continued in the same situation—in order to explain the belief entertained by the chauffeur, gives rise to some doubt as to whether there was actually any transfer, or as to whether the truth was what the chauffeur believed, in spite of the registration of the contract and of the oath given by the contracting parties,

but this doubt, strong as it may be, does not warrant such a grave conclusion.

Since we hold the foregoing views regarding the evidence weighed as a whole, it is clear that, without going into a consideration of the questions as to whether or not the evidence objected to should have been admitted and as to whether or not the accident was due to the negligence of the driver, the appeal taken by the defendant is proper, and the judgment must be reversed and another rendered instead dismissing the action, without special imposition of costs.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.